## A02A0364. RICHARDSON v. THE STATE.
(567 SE2d 693)

BLACKBURN, Chief Judge.

Reginald Edward Richardson was convicted of theft by taking a motor vehicle, criminal trespass, battery, simple battery (two counts), and giving a false name. In this appeal, Richardson contends

---

that the trial court erred in denying his motion for new trial. He challenges the sufficiency of the evidence only as to two crimes. He also claims that he was denied effective assistance of counsel and asserts that the trial court erred in considering his prior convictions during the sentencing phase. After review of these alleged errors, we affirm.

On appeal, the evidence must be viewed in a light most favorable to the verdict, and Richardson no longer enjoys the presumption of innocence. *Pollard v. State*.[1] The evidence, when viewed in that light, established that the victim and Richardson married in 1986, separated after 21 days, and divorced in 1988. Their relationship was often tumultuous and marred by violence.

After having no contact for nearly 13 years, Richardson approached his ex-wife for help. She agreed to let Richardson live with her and her mother temporarily because he had no job, money, or car, and she wanted to "help him get himself on the right track." After moving into the victim's apartment, Richardson began working at a nearby construction site. Shortly after Richardson moved in, arguments arose, primarily about money and Richardson's reluctance to pay his own bills. After a particularly violent altercation, police were summoned. Deciding she had "had enough," his ex-wife told him to move out, and he relocated nearby. Subsequently, when Richardson continued to seek food from her, his former spouse would drop things over her third-floor balcony because she was afraid of him and was reluctant to open her apartment door.

Late one night, the victim heard Richardson banging on her door and yelling her name. After she said, "[g]o away, we can talk tomorrow," Richardson kicked in the door, splintering the wooden frame and breaking the locks. He immediately punched her in the mouth, knocking her backward. After the victim yelled for her elderly mother to dial 911, Richardson placed his hand over her mouth and nose so "I couldn't even breathe."

As the victim's mother, who has Alzheimer's disease, heart problems, and diabetes, asked, "where's the phone, where's the phone?" Richardson attacked her. Grabbing his former mother-in-law around the waist, Richardson slammed and dragged her across the room, throwing her down. While doing so, he announced, "[w]ell, if I'm going to jail then I might as well go for something." Richardson then pulled out what the victim described as "a big, old western gun," and pointed it directly at her. During the ensuing struggle over the gun, it discharged into the ceiling. After the gun blast, Richardson fled, taking the victim's car keys. She testified that "he got to my car, got in, and was gone." After contacting her by phone five or six times and

---

[1] *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998).

ignoring her pleas to return her car, Richardson finally revealed that the car was parked at a place known as the Bluff. When his ex-wife located her car parked there, she contacted police. Since Richardson had her keys, the car had to be towed.

Three days after Richardson's violent outburst, while on routine patrol, Officer Thomas B. Stephens encountered a marooned motorist whose car had run out of gas. The stranded motorist was, in fact, Richardson, who was driving a stolen vehicle. While aiding Richardson by using his cruiser's "push bumper" to move the car to a gas station, Stephens learned that the car had been reported stolen. When arrested, Richardson gave what Stephens described as "a prison I.D. or an inmate I.D. card." Stephens recognized Richardson's face on the card but noticed the name on the card was "Randy Richardson or something of the sort." Stephens testified that "he gave me an I.D. that was not his true identity."

1. Richardson contends that the evidence was insufficient to support a finding of theft by taking a motor vehicle. However, the victim testified that after Richardson absconded with her car keys, her car was missing. The responding officer to the scene, the same officer who would later apprehend Richardson, testified that the victim told police Richardson had taken her keys and left in her car. Richardson's ex-wife denied giving him permission to use her car and testified that Richardson refused to return it even though she begged him to do so. Only after Richardson disclosed the whereabouts of the vehicle was she able to locate her car. No evidence indicated that the ignition had been subjected to any tampering. From this evidence, the jury could find all the requisite elements of theft by taking a motor vehicle. *Cook v. State;*[2] see OCGA § 16-8-2.

2. Richardson contends that the evidence was insufficient to support a finding of giving a false name. He asserts that the record contains no evidence that he deliberately tried to mislead the officer as to his correct identity. Claiming that the ID card had been issued to him by the Department of Corrections ("DOC"), he argues that the DOC, not he, is responsible for the error because "for 13 years the Department of Corrections referred to this man as Randy Robinson."

While no copy of this ID card appears in the record, and regardless of the origin of the card, the arresting officer testified that Richardson gave him a false name. See OCGA § 16-10-25. No evidence presented at trial shows that the name that Richardson provided to the officer appears on Richardson's official birth certificate, Social Security card, or driver's license. See *Johnson v. State.*[3] No evidence

---

[2] *Cook v. State,* 180 Ga. App. 139, 140 (348 SE2d 687) (1986).
[3] *Johnson v. State,* 149 Ga. App. 273, 274 (1) (253 SE2d 889) (1979).

shows that Richardson is, in fact, anyone other than Richardson.[4] On the contrary, Exhibit 3, admitted for sentencing purposes, shows that Richardson had been indicted in another case in a different county as "Randy Robinson." In the sentencing sheet for that case had been inserted: "true name: Reginald Richardson."

3. Richardson contends that the trial court erred in considering his prior convictions at sentencing. He claims that the State failed to provide proper notice as required by OCGA § 17-10-2 of its intent to seek recidivist sentencing.

When the State seeks to present evidence in aggravation, it must provide the defendant with "clear notice" of all previous convictions sought to be introduced at trial. *West v. Waters*.[5] Although this "clear notice" need not be in writing even though written notice is preferable, the notice must be "adequate and clear." *Mullinax v. State*.[6]

Here, the State met the "clear notice" requirement. The State faxed its "Notice of State's Intention to Seek Punishment of the Defendant as a Repeat Offender" to defense counsel. Although defense counsel advised the trial court that he did not recall receiving the facsimile and that it had likely been sent to his former office, counsel stated that he had no reason to doubt that the State had sent it to him. When the trial court inquired as to whether there was any issue that this was Richardson's fifth felony conviction, defense counsel responded, "I've seen those certified copies [of felony convictions], Judge, that he's provided me, and I was provided with a criminal history early on, which has a number of arrests and convictions." Later, at the motion for new trial hearing, defense counsel was asked,

> Prosecutor: And do you remember you and I had a conversation about the State filing recidivist treatment — filing for recidivist treatment previously?
> Defense counsel: You and I talked about recidivism, we talked about his convictions, and we talked about everything in regards to plea negotiations before the case went to trial.

Since the record shows that Richardson received "clear notice" as required by OCGA § 17-10-2, the trial court did not err in imposing a recidivist sentence. See *Mullinax*, supra.

---

[4] Although not entered in evidence, a Georgia Crime Information Center report indicates that Richardson has availed himself of multiple birth dates, several different Social Security numbers, and multiple aliases, including that of "Randy Robinson."

[5] *West v. Waters*, 272 Ga. 591 (1) (533 SE2d 88) (2000).

[6] *Mullinax v. State*, 242 Ga. App. 561, 563 (2) (530 SE2d 255) (2000).

4. Richardson asserts that the trial court erred by not finding his trial counsel was ineffective. He claims that his counsel failed to adequately confer with witnesses about the false name charge and did not seek a jury charge relating to the false name charge for the prison ID card. He also complains that his counsel failed to cross-examine the victim about the differences between what she had told him she would testify to prior to trial and her actual testimony at trial.

To establish ineffectiveness, an appellant must show not only that his counsel's performance was deficient but also that the deficiency prejudiced him. *Rucker v. State.*[7] Failure to satisfy either requirement is fatal to an ineffectiveness claim. *Brewer v. State.*[8] Consequently, absent a showing of prejudice, no inquiry need be made into trial counsel's purported deficiencies or vice versa. *Ortiz v. State.*[9]

Here, Richardson raises only unsubstantiated generalities. He did not specifically name a single witness with whom his counsel failed to confer. Nor did he frame the jury instruction that purportedly should have been sought. Although Richardson claims that he was prejudiced by his trial counsel's failure to cross-examine his ex-wife "as to the differences in what she had told him she would testify to prior to trial and her subsequent testimony at trial," he cited to no particular discrepancy. Since Richardson failed to show that the trial court's finding that he was not denied effective assistance of counsel was clearly erroneous, that finding must be affirmed. *Kelly v. State.*[10]

5. Richardson contends that the trial court erred in denying his motion for new trial because the prosecutor stated during his closing argument that he did not believe a particular defense witness. The transcript, however, fails to show that Richardson interposed any objection. Therefore, any issue as to the purported impropriety of the remark was not preserved, and the issue was waived. *Rogers v. State.*[11]

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED MAY 7, 2002 —
RECONSIDERATION DENIED JUNE 20, 2002.

*Sidney L. Storesund,* for appellant.
Reginald E. Richardson, *pro se.*

[7] *Rucker v. State,* 268 Ga. 406, 407 (2) (489 SE2d 844) (1997).

[8] *Brewer v. State,* 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997).

[9] *Ortiz v. State,* 222 Ga. App. 432, 434 (5) (474 SE2d 300) (1996).

[10] *Kelly v. State,* 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).

[11] *Rogers v. State,* 247 Ga. App. 219, 222-223 (5) (543 SE2d 81) (2000).

*Patrick H. Head, District Attorney, C. Lance Cross, Amelia G. Pray, Assistant District Attorneys*, for appellee.